
**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
------------------------------------------------------------X

BERKLEY ASSURANCE COMPANY,

          Plaintiff,

-against-

SUNPOWER CORPORATION,

          Defendant.

------------------------------------------------------------X

Case No.

**COMPLAINT FOR DECLARATORY RELIEF**

Plaintiff, BERKLEY ASSURANCE COMPANY, by and through its attorneys, PILLINGER MILLER TARALLO LLP, as and for its Complaint against Defendant, SUNPOWER CORPORATION, hereby alleges, upon information and belief, as follows:

**THE PARTIES**

1. Plaintiff, BERKLEY ASSURANCE COMPANY ("Berkley"), is and at all times relevant herein was, a statutory insurance company, which is domiciled in Iowa with its principal place of business in Scottsdale, Arizona.

2. Defendant, SUNPOWER CORPORATION ("SunPower"), is and at all times relevant herein was, a Delaware Corporation, with a principal place of business in San Jose, California.

**JURISDICTION AND VENUE**

3. Berkley is not a citizen of the same state as SunPower and the matter in controversy exceeds the sum of $75,000, exclusive of interest, attorney's fees, and costs. Therefore, this Court has jurisdiction pursuant to 28 U.S.C. §1332.

4. An actual, justiciable, controversy exists between the parties regarding whether coverage is afforded under an insurance policy Berkley issued to SunPower (the "Berkley policy")

for two claims submitted by SunPower for damage to solar photovoltaic systems ("Systems") at Target Corporation ("Target") distribution centers located in California.

5. The Berkley policy contains the following "Choice of law" and "Jurisdiction and Venue" provisions:

> **N.  Choice Of Law**
>
> All matters arising from or related to this Policy, including without limitation questions related to the validity, interpretation, performance, and enforcement of this Policy, all forms of contractual, tort and statutory claims, and all remedies and entitlement to costs or attorneys' fees in a dispute over any of the foregoing, shall be determined in accordance with the law and practice of the State of New York (notwithstanding New York's conflicts of law rules).
>
> **O.  Jurisdiction and Venue**
>
> It is agreed that, in the event of any dispute arising from or related to this Policy, including without limitation questions related to the validity, interpretation, performance, and enforcement of this Policy, and all forms of contractual, tort and statutory claims, you and we will submit to the jurisdiction of any court (State or Federal) in New York and will comply with all the requirements necessary to give such court jurisdiction. Nothing in this clause constitutes or should be understood to constitute a waiver of your or our right to remove an action to the United States District Court, regardless of the jurisdiction in which an action is commenced.

6. Venue is proper under 28 U.S.C. §1391 because SunPower has consented to the application of New York law and to the personal jurisdiction in this Court by agreement of the parties.

7. Circumstances exist that justify the determination by this Court, pursuant to 28 U.S.C. Section 2201 and 28 U.S.C. 2022, of the rights and obligations between Berkley and SunPower under the Berkley policy, a determination that will be beneficial to both Berkley and SunPower.

## THE BERKLEY POLICY

8. Berkley issued to SunPower policy number policy number PCAB-5013067-1120 (Berkley policy), effective November 1, 2020 to April 1, 2022, with Limits of Liability of $10,000,000 Each Claim and in the aggregate for "Coverage B. Professional Liability" and "Coverage F. Mitigation," subject to a $1,000,000 Self-Insured Retention.  (**Exhibit A**.)

9. "Coverage B. Professional Liability" in the Berkley policy provides:

    **B. Professional Liability**

    We will defend you against any **Professional Claim** (as provided in Section III.A. of this Policy) and pay on your behalf all **Damages** and **Claim Expense** for that **Professional Claim** in excess of any applicable Self-Insured Retention, provided that:

    1. the **Professional Claim** arises out of an actual or alleged negligent act, error or omission in the rendering of or failure to render **Professional Services** by you, or by a **Responsible Entity** for whom you are legally responsible, on or after the **Retroactive Date** and before the end of the **Policy Period**; and

    2. the **Professional Claim** is first made against you during the **Policy Period** or Optional Extended Reporting Period, if applicable, and reported in writing by you to us during one of those periods or the Automatic Extended Reporting Period; and

    3. prior to the effective date of the first policy insuring this type of **Professional Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances which could give rise to a **Professional Claim**

10. "Coverage F. Mitigation" in the Berkley policy provides:

    **F. Mitigation**

    We agree to pay you or on your behalf for **Mitigation Cost** in excess of any applicable Self-Insured Retention to mitigate or avoid a **Professional Claim**, **Pollution Claim**, **Cyber Claim** or **Media and Personal Injury Claim** that would be covered under this Policy, provided that:

    1. the services or other activities you seek to mitigate or rectify were rendered or performed on or after the **Retroactive Date** and before the end of the **Policy Period**; and

2. the circumstances that would reasonably be expected to lead to such **Claim** are first reported in writing by you to us during the **Policy Period**; and

3. prior to the effective date of the first policy insuring such type of potential **Claim** issued to you, and continuously renewed by us, the **Principal Personnel** had no knowledge of circumstances that could give rise to a **Claim**; and

4. before incurring any **Mitigation Cost**, you demonstrate to us the reasonableness and necessity of the proposed cost in light of the projected benefit in terms of mitigating or avoiding a covered **Claim**, and we provide our express written consent for such **Mitigation Cost**, such consent not to be unreasonably withheld.

11. The Berkley Policy sets forth the following definitions:

    …

    C. **Claim** means **Professional Claim**, **Pollution Claim**, **Cyber Claim**, and **Media and Personal Injury Claim.**

    D. **Claim Expense** means reasonable and necessary fees and costs incurred by us to investigate and defend any **Claim** for which coverage is provided under this policy, including fees and costs charged by adjusters appointed by us to investigate a **Claim**. **Claim Expense** includes reasonable and necessary fees in defending such a **Claim**, for attorneys, investigators, arbitrators, mediators, consultants and expert testimony, as well as court and arbitration costs and expenses, but shall not include any remuneration, salaries, regular or overtime wages, benefits, fees or other payment of directors, officers, managers and employees of you or us, or fees and expenses of independent adjusters. **Claim Expense** also includes premiums for the covered portion of appeal bonds, attachment bonds or any similar bonds; however, we are not obligated to apply for, secure or furnish any such bond.

    …

    J. **Damages** mean any amounts you are legally obligated to pay.

    …

    L. **First Party Claim** means a **Protective Claim** and any other request of us by you for **Mitigation Cost** or for sums arising out of any of the insuring agreements described in the Supplemental Coverage Section of this Policy.

    M. **Information Technology Products** means a computer or telecommunication hardware or software product or other electronic product that is used, created, developed or manufactured by or for you, including software updates, service packs and other maintenance releases for such products.

    …

Q. **Loss** means **Protective Loss**, **Third Party Loss**, **Mitigation Cost** and any other amount to which you are entitled under any of the insuring agreements described in the Supplemental Coverages Section of this Policy.

…

X. **Mitigation Cost** means reasonable and necessary fees or direct costs incurred to mitigate or rectify **Professional Services**, **Contractor Activities**, **Media Activities** or **Information Technology Services** that would reasonably be expected to give rise to a **Claim** covered by this Policy, including, in the event of a **Cyber Security Breach**, costs we incur to engage a qualified firm on your behalf to:

1. investigate the **Cyber Security Breach**;
2. notify any parties affected by the **Cyber Security Breach**;
3. perform credit monitoring service for your clients' individual personal data or your clients' corporate data lost because of the **Cyber Security Breach**; and
4. restore or recreate, if possible, any of your clients' lost data caused by the **Cyber Security Breach**.

Your fees or direct costs may be treated as **Mitigation Cost** only with our prior written consent before being incurred, which consent shall not be unreasonably withheld. **Mitigation Cost** does not include any fees or direct costs relating to or resulting from **Emergency Expense**; betterment; or the failure to prevent or detect faulty workmanship.

…

GG. **Professional Claim** means a written demand, demand for arbitration or mediation or suit made against you seeking **Damages** or correction of **Professional Services** and alleging a negligent act, error or omission in the rendering of or failure to render **Professional Services**.

HH. **Professional Services** means:

1. Construction Management, Program Management, Project Management, Owner's Representation, Property Management, Real Estate Brokerage/Agency, Property Development, Lease Brokering, any delegated design responsibility or design assist services, including but not limited to constructability reviews or value engineering; or

2. architecture; engineering; contract administration as part of design; sprinkler design; fire protection design; life safety design; mechanical, electrical or security systems design; light use, acoustical or signage design; landscaping design; surveying; quantity surveying; project accounting, quality control reviews, assist or documentation, material testing; cost consulting, economic, feasibility, technical consulting or technical studies or opinions, or scientific reviews; software design for the purpose of operating or maintaining any building system; interior

    design or space planning services; or design services to support Leadership in Energy and Environmental Design (LEED) certification for a project; or

3. professional services with respect to any Building Information Modeling (BIM) systems, including but not limited to modification, alteration, transfer, protection, manipulation, use, or misuse thereof, or design assist system or program, and the foregoing within Integrated Project Delivery (IPD), Public-Private Partnership projects (P3s), or Lean Project Delivery System (LPDS); or

4. environmental consulting, environmental engineering, environmental site assessment, remedial investigations, feasibility studies, remedial design, environmental monitoring, testing and sampling, remedial oversight and management, ecological studies, environmental training, industrial hygiene, forensic inspections and expert witness services; or

5. ordinary technology services utilized in the performance of the Professional Services described above. Such technology services include the design, development, programming, analysis, training, use, hosting, management, support, and maintenance of any software, database, internet service, or website.

**12.** Section "V. EXCLUSIONS" in the Berkley policy provides:

> We will not be liable to make payments or indemnify you for any **First Party Claim**, **Claim** or **Loss** directly or indirectly for or arising out of:…
>
> **C.** any design or manufacture of any goods or products which are sold or supplied by you or by anyone under license to you, including any parts, components, assemblies or equipment installed or incorporated by or on behalf of you into your work. This Exclusion does not apply to (1) software sold or supplied by you in connection with your provision of other **Professional Services**, or (2) goods or products installed or incorporated in your work which have been specially designed, but not manufactured, by you or on your behalf by a qualified **Responsible Entity** for use in a specific project, or (3) goods or products installed or incorporated in your work that cause a **Pollution Loss** arising out of a **Pollution Condition** resulting from the performance of **Contractor Activities**, or (4) **Information Technology Products**.

**13.** The Berkley policy contains an "**Amendment of Specified Exclusion Endorsement**" that deletes and replaces Exclusion C as follows:

> In consideration of the premium paid, it is understood and agreed that the Exclusion described in the Location of Specified Exclusion field, below, of Section V. is deleted in its entirety and replaced with the Exclusion contained within the Amended Exclusion field, below:

Location of Specified Exclusion:

C.

Amended Exclusion:

C. any design or manufacture of any goods or products which are sold or supplied by you or by anyone under license to you, including any parts, components, assemblies or equipment installed or incorporated by or on behalf of you into your work. This Exclusion does not apply to (1) software sold or supplied by you in connection with your provision of other **Professional Services** or (2) **Information Technology Products**.

## THE SUBJECT CLAIMS

14.  SunPower is a solar energy company that delivers complete solar solutions to customers in the United States through an array of hardware, software and financing options.

15.  SunPower sold to Target its "Helix" solar panel system for use at Target distribution centers in California, including distribution centers in Rialto and Fontana, California.

16.  SunPower's Helix solar panel system, as utilized at the Target distribution centers (collectively the "SunPower Solar Products"), included, among other goods and products, photovoltaic panels, inverters, racking assemblies (the "Helix Racking") that was installed on the roofs of Target distribution centers.

17.  The Helix Racking is part of and/or an integral part of the SunPower Solar Products sold to Target.

18.  Under local building codes, the SunPower Solar Products mounted on the Target distribution centers were to withstand wind speeds of approximately 130 mph.

19.  On November 25, 2021, wind speeds of approximately 70 mph to 75 mph resulted in hundreds of damaged and/or dislodged panels at the Rialto, California, project (the "Rialto Incident").

20.  SunPower was aware of the Rialto Incident shortly after it occurred, and by email dated December 7, 2021, it classified the "loss" as "GL" (general liability"). (**Exhibit B**.)

21. On or about December 10, 2021, SunPower was placed on notice of a subrogation claim arising from the Rialto Incident.  (**Exhibit C**.)

22. Berkley was placed on notice of the Rialto Incident, and acknowledged same by letter dated December 21, 2021.  (**Exhibit D**.)

23. On January 22, 2022, wind speeds of approximately 60 mph caused similar damage at the Fontana, California, project (the "Fontana Incident").

24. On or about January 25, 2022, Berkley was provided notice of the Fontana Incident through Marsh USA, Inc. and acknowledged same by letter dated January 26, 2022.  (**Exhibit E**.)

25. By email dated February 2, 2022, Target asserted claims against SunPower related to the Rialto Incident and Fontana Incident and sought replacement of all solar arrays held in place by the Helix Racking.  (**Exhibit F**.)

26. By letter dated March 7, 2022, SunPower, through its outside counsel, sent a "Notice of Claim" to Berkley arising out the Rialto Incident and Fontana Incident, and Target's request that SunPower "commit to replacing all solar arrays that contain Helix racking."  (**Exhibit G**.)

27. By letter dated November 9, 2022, Berkley denied coverage to SunPower for the Rialto Incident and Fontana Incident.

**AS AND FOR A CAUSE OF ACTION FOR DECLARATORY JUDGMENT**

28. Berkley repeats, reiterates and realleges each and every allegation contained in paragraphs "1" to "27" of this Complaint as if fully set forth herein.

29. This claim for declaratory judgment is brought as there is an actual and justiciable controversy between Berkley and SunPower as to whether SunPower entitled to coverage under the Berkley policy with respect to the Rialto Incident and Fontana Incident.

30. Berkley has no adequate remedy at law.

31. The Berkley policy contains an "**Amendment of Specified Exclusion Endorsement**" that deletes and replaces Exclusion C (hereafter "Exclusion C") and states as follows:

> We will not be liable to make payments or indemnify you for any **First Party Claim**, **Claim** or **Loss** directly or indirectly for or arising out of:…
>
> Amended Exclusion:
>
> C. any design or manufacture of any goods or products which are sold or supplied by you or by anyone under license to you, including any parts, components, assemblies or equipment installed or incorporated by or on behalf of you into your work. This Exclusion does not apply to (1) software sold or supplied by you in connection with your provision of other **Professional Services** or (2) **Information Technology Products**.

32. SunPower's liability for the Rialto Incident and Fontana Incident arises from its design or manufacture of goods or products which it sold or supplied to Target, including parts, components, assemblies or equipment installed or incorporated by or on behalf of SunPower into SunPower's work.

33. SunPower's liability for the Rialto Incident and Fontana Incident, and request by Target that SunPower commit to replacing all solar arrays, arises from SunPower's Helix Racking that was part of the SunPower Solar Products sold to Target.

34. The exception to the exclusion for software sold or supplied by you in connection with your provision of other **Professional Services** or (2) **Information Technology Products** in Exclusion C does not apply to the claims asserted in the Rialto Incident and Fontana Incident.

35. Based upon Exclusion C, coverage is excluded for the Rialto Incident under Coverage B. Professional Liability in the Berkley policy.

36. Based upon Exclusion C, coverage is excluded for the Fontana Incident under Coverage B. Professional Liability in the Berkley policy.

37. Based upon Exclusion C, coverage is excluded for the <u>Rialto Incident</u> under Coverage F. Mitigation in the Berkley policy.

38. Based upon Exclusion C, coverage is excluded for the <u>Fontana Incident</u> under Coverage F. Mitigation in the Berkley policy.

39. Based upon Exclusion C, coverage is excluded under Coverage B. Professional Liability in the Berkley policy for the repair and replacement of all solar arrays sold to Target, held in place by the Helix Racking.

40. Based upon Exclusion C, coverage is excluded under Coverage F. Mitigation in the Berkley policy for the repair and replacement of all solar arrays sold to Target, held in place by the Helix Racking.

41. The Berkley policy does not provide coverage to SunPower for the <u>Rialto Incident,</u> the <u>Fontana Incident</u>, or for the for the repair and replacement of all solar arrays sold to Target, held in place by the Helix Racking.

42. Berkley is entitled to a declaratory judgment that:

   (a) There is no coverage under the Berkley Policy for the <u>Rialto Incident,</u> the <u>Fontana Incident</u>, or for the for the repair and replacement of all solar arrays sold to Target, held in place by the Helix Racking;

   (b) Berkley is not obligated to defend or indemnify SunPower for the <u>Rialto Incident,</u> the <u>Fontana Incident</u>, or for the for the repair and replacement of all solar arrays sold to Target, held in place by the Helix Racking; and

   (c) Such other and further relief as the Court deems just and proper.

## CONCLUSION

WHEREFORE, Berkley prays for judgment as follows:

1. That this Court determine and adjudicate the rights, duties and obligations of the parties with respect to the Berkley policy;

2. That Berkley be awarded Declaratory Judgment on each and every Cause of Action alleged herein;

3. That there is no coverage under the Berkley Policy for the Rialto Incident, the Fontana Incident, or for the for the repair and replacement of all solar arrays sold to Target, held in place by the Helix Racking;

4. That Berkley is not obligated to defend or indemnify SunPower, under any part of the Berkley policy, for the Rialto Incident, the Fontana Incident, or for the for the repair and replacement of all solar arrays sold to Target, held in place by the Helix Racking System; and

5. Such other and further relief as the Court deems just and proper.

Dated: June 30, 2023

**PILLINGER MILLER TARALLO, LLP**

By: _/s/ Neil L. Sambursky_

Neil L. Sambursky, Esq. (NS-8520)
1140 Franklin Avenue, Suite 214
Garden City, New York 11530
Ph: 516-408-5408

Attorneys for Plaintiff
BERKLEY ASSURANCE COMPANY